PAUL T. DYE, Cal. State Bar No. 81753
SALTZBURG, RAY & BERGMAN, LLP
12121 Wilshire Boulevard, Suite 600
Los Angeles, California 90025-1166
(310) 481-6700 – Fax: (310) 481-6720
E-Mail: ptd@srblaw.com

Attorneys for Defendant, Crossdefendant and Counterclaimant, Patti Michaely

WILLIAM COOPER, ESQ., State Bar No. 2213
WILLIAM E. COOPER LAW OFFICES
601 E. BRIDGER AVENUE
LAS VEGAS, NEVADA 89101
(702) 382-5111 – Fax: (702) 382-2170
E-Mail: wecooper@williamcooperlaw.com

Attorneys for Defendant, Crossdefendant and Counterclaimant, Patti Michaely

CHARLES LOMBINO, State Bar No. 8547
LOMBINO LAW STUDIO, LTD
2716 Lovington Drive
Henderson, Nevada 89074
(702) 357-8620
EMAIL: cdl@lombinolawstudio.com

Attorneys for Defendant, Crossdefendant and Counterclaimant, Robb Evans, Receiver

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTHERN NEVADA

| | |
|---|---|
| THE GALINA SUDAI 2009 IRREVOCABLE TRUST FOR THE BENEFIT OF HER HANDICAPPED SON, MICHAEL KUBRAK,<br><br>Plaintiff,<br><br>v.<br><br>ROBB EVANS, Receiver over the Assets of Joshua Michaely; PATTI MICHAELY and JOSHUA MICHAELY, and DOES 1 through X, inclusive,<br><br>Defendants.<br><br>AND COUNTERCLAIM AND CROSSCLAIM | Case No. Case No. 2:09-cv-2181-LDG-RJJ<br><br>**MOTION BY CROSS-DEFENDANTS ROBB EVANS AND PATTI MICHAELY TO DISMISS CROSSCLAIM BY JOSHUA MICHAELY UNDER FED.R.CIV.P. RULE 12B-6** |

1

Cross-defendants Patti Michaely ("Patti") and Robb Evans, who has been appointed Receiver over the assets of J. Michaely (the "Receiver"), move to dismiss the crossclaim of cross-claimant, defendant and judgment debtor Joshua Michaely ("J. Michaely") as follows:

## I.  INTRODUCTION.

Patti and the Receiver (collectively "Counterclaimants") have previously filed Rule 12(b)(6) motions to dismiss both of the failed efforts of plaintiff The Galina Sudai 2009 Irrevocable Trust for the Benefit of Her Handicapped Son Michael Kubrak (the "Trust") to state a claim. As Counterclaimants noted in those motions, J. Michaely is the man behind the curtain manipulating and directing the Trust in all of its actions, including the filing of this lawsuit.

J. Michaely continues his shell game by filing a crossclaim. J. Michaely's allegations, even more vague than those of the Trust, fail to state a claim. His bald defamation allegations fail to identify what the defamatory statements were, when they were made or where they were made. His claims, like those of the Trust, are based on privileged utterances appearing in pleadings or related to lawsuits Patti has brought against J. Michaely. J. Michaely, like the Trust, lacks standing. Also like the Trust, J. Michaely has failed to get permission to sue the Receiver.

Despite having the benefit of the two motions to dismiss that detail these defects in the Trust pleadings, J. Michaely wastes the time of Patti, the Receiver and this court with his obviously defective pleading. The crossclaim should be dismissed without leave to amend.

## II.  STATEMENT OF FACTS.

The crossclaim manages, barely, a number of half-truths. It acknowledges in ¶ 16 that: "Defendant P. Michaely has a large judgment against J. Michaely from a divorce that took place more than 15 years prior." The referenced judgment was awarded in an action entitled *In re Marriage of Patti Michaely and Joshua Michaely*, Case No. BD 206726, in the Superior Court for the State of California, County of Los Angeles (the "Dissolution Action"). The action was indeed filed 15 years ago, but it took 10 years to resolve. A copy of the judgment (the "Dissolution Judgment"), which was entered in 2005, is attached as Exhibit "I" to the Request for Judicial Notice

filed by Counterclaimants in this action on April 8, 2010 (the "RJN").[1] It awards Patti $21 million in damages, plus spousal support and attorneys' fees. With interest, the amount of the judgment now exceeds $56 million.

Patti has been attempting to collect on the Dissolution Judgment. As part of that effort, she sought appointment of a receiver in the Dissolution Action. Attached to the RJN as Exhibit "A" is a copy of the Order Appointing Receiver In Aid of Execution dated June 18, 2008. This is the Order whereby Robb Evans became Receiver over J. Michaely's assets. Per the Order at p. 3, ¶ 5, those assets include all of J. Michaely's "claims, causes of action, choses in action, assets," which would include his claim here. Thus, J. Michaely lacks standing to bring this claim because it is an asset over which the Receiver has control. Also relevant to J. Michaely's claims is Exhibit "B," which is an Order in the Dissolution Action giving the Receiver authority to join as a plaintiff in the Kubrak Action. As discussed below, based on the principle of absolute derivative judicial immunity, this Order insulates the Receiver from claims based on Receiver's participation in the Kubrak Action.

The crossclaim alleges in ¶ 12 that Counterclaimants have filed "multiple lawsuits against J. Michaely's employers," who are identified in ¶ 24 as Ms. Kubrak-Sudai and her companies. The actual number of lawsuits filed against J. Michaely's employers is two. One of these is the counterclaim in this action. The second is *Patti Michaely v. Galina Kubrak, et al.*, Case No. SC093092, in the Superior Court for the State of California, County of Los Angeles (the "Kubrak Action"). The institution of the Kubrak Action was also part of Patti's efforts to collect on the

---

[1] Counterclaimants here reiterate their request for judicial notice. The RJN is Doc. # 49 in this court's system.

Note that "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 127 S.Ct. 2499 (2007).

Furthermore, although a plaintiff is not required to attach to the complaint the documents on which it is based, when a plaintiff fails to do so, the defendant may attach to a Rule 12 motion the documents that are referred to in the complaint to show that the documents do not support plaintiff's claims. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) (overruled on other grounds in *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1127 (9th Cir. 2002); *Bryant v. Avado Brands Inc.*, 187 F.3d 1271, 1281, fn 16 (11th Cir. 1999). This prevents "a plaintiff with a legally deficient claim (from surviving) a motion to dismiss simply by failing to attach a dispositive document on which it relied". *Pension Benefit Guar. Corp. v. White Consolidated Industries Inc.*, 998 F.2d 1192, 1196 (3rd Cir. 1993) (parentheses added).

Dissolution Judgment. The second amended complaint in the Kubrak Action is attached as Exhibit "J" to the RJN. It alleges that Kubrak and entities under her nominal control conspired with and aided and abetted J. Michaely in his fraudulent efforts to hide his assets from Patti.

J. Michaely's crossclaim further alleges in ¶ 12 that these lawsuits against Kubrak and her companies claim "all manner of false claims against his employers, to induce the employers to fire J. Michaely from their employ." Similar allegations appear in ¶ 24 and elsewhere. It is evident from judicially noticeable court records that the lawsuits <u>do not</u> contain false claims against Galina Kubrak or her companies.[2] These records include the $26 million judgments that Patti obtained against Galina Kubrak and two of her companies in the Kubrak Action. The judgments obtained by Patti in the Dissolution Action are attached to the RJN as Exhibits "C," "D," and "K" (collectively the "Kubrak Judgments").

Last November, just prior to entry of the Kubrak Judgments, J. Michaely and Kubrak created the Trust as the latest of the Kubrak entities designed to hinder, delay and defraud Patti in her collection of the sums owed to her. All of its assets come from fraudulent transfers by J. Michaely and Kubrak. The filing of this action by the Trust and cross-claim by J. Michaely are a part of J. Michaely's hinder, delay and defraud strategy, as are three recent bankruptcies by Kubrak entities holding J. Michaely's assets. See Exhibits "E," "F" and "G."

Adding J. Michaely as a defendant in this action was a ruse designed to create the illusion that he is adverse to the Trust, and to hide the true state of affairs, which is that he controls the Trust. The Judgment against Kubrak pulls the curtain on J. Michaely's attempt here to manipulate the judicial system and further delay justice that Patti has been seeking since 1995. Indeed, the Dissolution Judgment and the Kubrak Judgments establish the truth of the Kubrak Action claims and thereby present an absolute defense to J. Michaely's claims of slander. J. Michaely's mantra: "Ignore the man behind the curtain," like that of the Wizard of Oz, must be ignored if justice is to be done.

---

[2] As Counterclaimants noted in their motions to dismiss the pleadings filed by the Trust, counter-defendant Galina Kubrak is J. Michaely's long time girlfriend, and is the "Galina Sudai" of plaintiff Galina Sudai 2009 Irrevocable Trust for the Benefit of Her Handicapped Son Michael Kubrak. She also figures prominently in the Trust's complaint in this action.

4

132263.1 8148.019

### III. THE DEFAMATION CLAIMS ARE DEFECTIVE.

J. Michaely's claims, which are based on alleged defamation, fail for a number of reasons. First, they lack sufficient detail to state a defamation claim. Such claims require allegation of the what defamatory statements were made, when they were made and where they were made. Second, the supposed wrongdoing by Patti and the Receiver consists of statements that were made in connection with legal actions against Kubrak and her entities. As such, the statements were privileged under the laws of both California (the place where the statements were made) and Nevada. Third, the matters claimed to be defamatory have been determined in the Kubrak Action to be true.[3] Fourth, as noted above, J. Michaely lacks standing to bring the claims because his assets, by court order, are under the control of the Receiver.

#### A. Requirements for Stating a Claim Based on Defamation.

In *Blanck v. Hager*, 360 F.Supp.2d 1137 (D.Nev. 2005), the court stated: "the elements of a defamation claim include: (1) a false and defamatory statement, (2) an <u>unprivileged</u> publication to a third person of the statement, (3) fault, amounting to negligence, and (4) actual or presumed damages." In measuring the complaint in that action against this standard, the court stated: "Plaintiff alleges that Defendants made false and defamatory statements about Plaintiff. Plaintiff does not identify <u>when</u> and to whom the statements were made, and therefore does not sufficiently plead the claim of defamation." See also *Williams v. Gorton*, 529 F.2d 668, 671-672 (9th Cir. 1976). Thus, a complaint (here, a crossclaim) must allege *what* defamatory statements were made, *when* they were made and *where* they were made. As the next subsection shows, the crossclaim fails this validity test.

#### B. J. Michaely's Defamation Claims.

Count One is designated as a claim for interference with contractual relations and Count Two as libel and slander per se. The claim for interference is based on the allegedly false claims made against Kubrak and her entities. Paragraph 24 alleges "Crossclaim Defendants chose to ruin his

---

[3] All but two of the arguments in this motion are simply based on the law and the complaint. The truth-as-a-defense argument relies upon matters of which the court may take judicial notice or are otherwise reviewable for the reasons set out in footnote 1, above. The argument in § V(b), below re judicial immunity has two bases, one of which depends upon reference to judicially noticeable material.

5

working relationship with Ms. Kubrak-Sudai by bringing all manners of false claims against her and her companies." The crossclaim provides no detail to support either of its claims. In addition to ¶ 24, the paragraphs that allege wrongdoing by Counterclaimants are as follows:

> 9. P. Michaely has hired attorney Dye, and later Receiver Evans, to act as her mouth piece to promote all manner of false claims and to intimidate employers and potential employers from working with J. Michealy.
>
> 10. *Upon information and belief*, these acts have included inventing false stories about crossclaim Plaintiff's relationship with and behavior towards P. Michaely.
>
> 11. These acts also include slandering J. Michaely's moral, ethical and business character.
>
> 12. These acts also include *filing multiple lawsuits against J. Michaely's employers*, claiming all manner of false claims against his employers, to induce the employers to fire J. Michaely from their employ. [4]
>
> 19. Crossclaim Defendants have further ruined J. Michaely's relationship with coworkers and potential investors by harassing or threatening legal actions against them.
>
> 29. Crossclaim Defendants' actions against J. Michaely have nothing to do with collecting her judgment.
>
> 33. As part of their efforts to harass Crossclaim Plaintiff, Crossclaim Defendants made false and defamatory statements concerning Crossclaim Plaintiff, his personal life and his business practices to third parties.

The obvious questions one would have after reading this are: "What did they say? Where did the statements appear? Who heard the statements? When were they made?"

Like the Trust complaint, the use of hyperbole, such as "all manner of false claims," appears to be a substitute for necessary information concerning what false statements and misrepresentations

---

[4] The second amended complaint against Kubrak and the Companies is attached to the RJN as Exhibit "J."

were made and when they were made. The only statement of where they were made is the deliberately vague statement in ¶ 12: "filing multiple lawsuits against J. Michaely's employers." As a result, the claims must be dismissed.

### C. Absolute Privilege Defense.

The defamation claims are also deficient because the alleged defamation appears in and is part a lawsuit. In California, where the lawsuit was filed, statements made in a judicial proceeding are privileged. Cal. Civil Code § 47 provides: "A privileged publication or broadcast is one made: ... (b) In any ... (2) judicial proceeding...." See *Hagendorf v. Brown*, 699 F.2d 478, 480 (9th Cir. 1983) ("California Civil Code section 47(2) makes privileged those publications made in a judicial proceeding. The privilege is absolute and unaffected by the presence of malice."). Nevada provides the same privilege. See *Circus Circus Hotels v. Witherspoon*, 99 Nev. 56, 60, 657 P.2d 101, 104 (1983) ("[There] is [a] long-standing common law rule that communications uttered or published in the course of judicial proceedings are absolutely privileged so long as they are in some way pertinent to the subject of controversy."); *Sahara Gaming Corp. v. Culinary Workers Union Local 226*, 115 Nev. 212, 215-217, 984 P.2d 164. See also Restatement of Torts, § 587, which states: "A party to a private litigation ... is absolutely privileged to publish false and defamatory matter of another in communications preliminary to a proposed judicial proceeding, or in the institution of or during the course and as a part of a judicial proceeding in which he participates, if the matter has some relation thereto."

### D. Truth is a Defense.

Counterclaimants attach as Exhibit "J" to the RJN the second amended complaint they filed against Kubrak and the Kubrak entities, which pleading is the basis for J. Michaely's defamation claims. They also attach as Exhibits "C," "D" and "K" judgments that have been entered in the Kubrak Action against Kubrak and two of the Companies, Nellis and Tarragon West Entertainment, Inc. These show that the matters alleged by J. Michaely to be defamatory are in fact true – that Kubrak and the Companies have acted as J. Michaely's straw person, have received fraudulent transfers from J. Michaely, and have assisted him in his fraudulent efforts to prevent Patti from collecting on J. Michaely's debt to her. These judgments award Patti $26 million in damages and

7

impose a constructive trust in her favor on each of the Companies and properties mentioned in the complaint in this action.

### E. J. Michaely Lacks Standing.

As noted above, J. Michaely no longer has control of any claims or choses in action because the order appointing the Receiver has transferred these assets to the Receiver.

A plaintiff must show standing to bring each of the claims asserted. See *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009); *Friends of the Earth, Inc. v. Laidlaw Envtl. Serv., Inc.*, 528 U.S. 167, 185, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) ("[A] plaintiff must demonstrate standing separately for each form of relief sought. J. Michaely, as the party invoking federal jurisdiction, bears the burden of establishing the elements for Article III standing. *Renee v. Duncan*, 573 F.3d 903, 908 (9th Cir. 2009).

## IV. J. MICHAELY CANNOT FILE AN ACTION AGAINST THE RECEIVER WITHOUT FIRST GETTING PERMISSION FROM THE COURT APPOINTING THE RECEIVER.

Insofar as the Receiver is concerned, the crossclaim is also fatally defective because it fails to allege that the Trust has received permission from the court appointing the Receiver to bring an action against him. Further, the claims fail because the Receiver has judicial immunity from the claims as they were made in connection with the performance of his duties as receiver.

Both California and Nevada law require that a plaintiff must obtain permission to sue a Receiver from the court appointing the receiver prior to bringing any action against him. See, *Gottwals v. Manske*, 99 P.2d 645, 648 (Nev. 1940) ("The court appointing a receiver has power, and it is its duty, to protect from interference the property in its possession through its receiver. It never tolerates such interference without its leave...."); *Ostrowski v. Miller*, 226 Cal. App. 2d 79, 84, 37 Cal. Rptr. 790 (1964); *McCarthy v. Pollson*, 173 Cal. App. 3d 1212, 1219, 219 Cal. Rptr. 375 (1985); *Aviation Brake Systems, Ltd v. Voorhis*, 133 Cal. App. 3d 230, 234, 184 Cal. Rptr. 766 (1982). See also *Porter v. Sabin*, 149 U.S. 473, 13 S.Ct. 1008, 37 L.Ed. 815 ("No suit, unless expressly authorized by statute, can be brought against the receiver without the permission of the court which appointed him.") In this regard, California Code of Civil Procedure § 568 empowers a

receiver to bring and defend actions as a receiver generally "under the control of the court" which appointed him. This section has been uniformly interpreted as requiring a claimant suing a receiver to seek permission from the court which appointed him. *Ostrowski v. Miller*, 226 Cal. App. 2d 79, 84, 37 Cal. Rptr. 790 (1964); *Vitug v. Griffin*, 214 Cal. App. 3d 488, 262 Cal. Rptr. 588 (1989) (the decision to grant or deny permission to sue a receiver is within the sound discretion of the court and reversible on appeal only upon a showing of an abuse of that discretion.)

J. Michaely has not sought such permission.

In *Vitug v. Griffin, supra*, the court stated that "[t]he purpose of the rule is to accommodate all claims possible in the receivership action under the supervision of the appointing court, and to render the receiver answerable solely to that court." Other courts have pointed out that the "permission-first" requirement was devised in order to protect the receiver and the estate against harassment and the expense of possibly unnecessary litigation. It is also founded upon notions of judicial economy as, in most cases, a claimant can seek the appropriate relief from the receivership action so that no independent action is necessary. The Ninth Circuit explained the rationale for the rule as follows:

> The rule rests upon firm ground: "One who brings suit against a receiver without leave seeks some advantage over other claimants upon the assets held by the receiver. Should such a claimant bring his suit in another jurisdiction, and succeed in obtaining a judgment against the receiver, he would have a right to an execution against the property in the possession of the receiver, and in enforcing execution issued by one court could seize the property held in trust by the receiver in another court. Thus the property of an estate held in trust by a receiver could be taken and applied to the liquidation of the claim of the holder of the judgment, regardless of the claims of other creditors, or of the directions of the court which appointed the receiver. This would put the court which appointed the receiver in an attitude of helplessness in dealing with the assets lawfully taken into its possession, to be administered as a trust through the receiver. [*Merryweather v. U.S.*, supra, 12 F.2d at 408-409.]

Given that J. Michaely failed to obtain approval from the Receivership Court to bring this action, its claims against the Receiver must be dismissed.

V. **THE RECEIVER HAS ABSOLUTE DERIVATIVE JUDICIAL IMMUNITY RESPECTING PLAINTIFF'S CLAIMS.**

Dismissal of the action based on the Receiver's absolute derivative judicial immunity also follows directly from the foregoing analysis. As shown by Exhibit B, the Receiver was authorized by

9

1  his appointing court to participate in the Kubrak Action, which is the source of the alleged

2  defamatory statements.

3      As a result, the Receiver is entitled to absolute derivative judicial immunity because he

4  "merely performed actions which the court ordered [him] to take." See *Kohlrautz v. Oilmen*

5  *Participation Corp.*, *supra*, 441 F.3d at 836; *New Alaska Development Corp. v. Guetschow*, 869

6  F.2d 1298, 1303-04 (9th Cir. 1989); *In re Paren*, 158 B.R. 447, 450 (Bkrtcy. N.D. Ohio 1993); *In re*

7  *Sundance Corp., Inc.*, 149 B.R. 641, 654-655 (Bkrtcy. E.D. Wash. 1993).

8      In *New Alaska Development Corp.*, *supra*, the Ninth Circuit stated:

> While our cases have not directly addressed the immunity due a receiver appointed by a state court to manage the business assets of a marital estate during a dissolution proceeding, their rationale teaches that absolute derivative judicial immunity is appropriate. Moreover, cases from other circuits have held uniformly that state court-appointed receivers are entitled to absolute immunity. They start with the premise that "receivers are court officers who share the immunity awarded to judges." *Kermit Const. v. Banco Credito Y Ahorro Ponceno*, 547 F.2d 1, 2 (1st Cir.1976); see also *Property Management & Investments, Inc v. Lewis*, 752 F.2d 599, 602 (11th Cir.1985); *T & W Investment Co. v. Kurtz*, 588 F.2d 801, 802 (10th Cir.1978); *Bradford Audio Corp. v. Pious*, 392 F.2d 67 (2d Cir.1968). Absent broad immunity, receivers would be "a lightning rod for harassing litigation aimed at judicial orders." *Kermit*, 547 F.2d at 3.

    The Ninth Circuit described the rationale for immunity in footnote 6:

> The cases reason that the receiver functions as an arm of the court by making decisions about the operation of a business that the judge otherwise would have to make. A receiver operates a business only because the court has directed him to do so in connection with a case pending before the court. This situation is dramatically different from a judge's administrative hiring and firing decisions for subordinate court personnel, which have no connection to litigation pending before the court.

    In *Kermit Construction Corp. v. Banco Creditco Y Ahorra Point Ponceno*, 547 F.2d 1, 3 (5th Cir. 1976), the Court stated:

> A receiver who faithfully carries out the orders of his appointing judgment must share the judge's absolute immunity. To deny this immunity would seriously encroach on the judicial immunity already recognized by the Supreme Court. [Citations omitted.] It would make the receiver a lightning rod for harassing litigation aimed at judicial orders. In addition to the unfairness of sparing the judge who gives the order while punishing the receiver who obeys it, a fear of bringing litigation down on the receiver might color a court's judgment in some cases; and if the court ignores the danger of harassing suits, tensions between the receiver and the judge seem inevitable.

See also *Smallwood v. United States*, 358 F. Supp. 398, 404 (E.D. Mo. 1973) aff'd 486 F.2d 1407(8th Cir. 1973) (receiver is an official, who under doctrine of judicial immunity, is afforded the same immunity as judges); *Bradford Audio Corp. v. Pious*, 239 F.2d 67, 73 (2nd Cir. 1968).

Note also that in *New Alaska* Development, *supra*, the Court stated that if a party sues a receiver, it must allege the absence of judicial immunity or plaintiff's complaint must be dismissed. "To limit the harassment of receivers 'as quickly as possible,' a plaintiff is required to allege the absence of judicial immunity. [Citation.] Failure to allege "that the judge's ultimate actions were not judicial or beyond the scope of the court's jurisdiction requires dismissal." 869 F.2d at 1303. See also *Ashelman v. v Pope*, 793 F.2d 1072, 1078 (9th Cir.1986).

Accordingly, the crossclaim must be dismissed because the Receiver is entitled to absolute derivative judicial immunity.

## IX. CONCLUSION.

For the reasons stated above, this motion must be granted.

Respectfully submitted,

LOMBINO LAW STUDIO, LTD.

DATED: May 25, 2010

By: /S/
CHARLES D. LOMBINO
State Bar No. 8547
Attorneys for Defendant and Counterclaimant,
Robb Evans, Receiver

WILLIAM E. COOPER LAW OFFICES

DATED: May 25, 2010

By: /S/
WILLIAM E. COOPER
Attorneys for Defendant and Counterclaimant,
Patti Michaely

11

| | |
|---|---|
| DATED: May 25, 2010 | SALTZBURG, RAY & BERGMAN, LLP |
| | By: _____ |
| | PAUL T. DYE |
| | Attorneys for Defendant and Counterclaimant, Patti Michaely |

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the Motion by Cross-Defendants Robb Evans and Patti Michaely to Dismiss Crossclaim by Joshua Michaely Under Fed.R.Civ.P. Rule 12b-6, was forwarded to the following parties, ***Via Electronic Court Mail Delivery System***, on the 1st day of June, 2010:

benbunkeresq@gmail.com
Benjamin L. Bunker
The Bunker Law Group, PLLC
953 East Sahara Avenue, Suite 200
Las Vegas, NV 89104

mmelendrez@hawkinsmelendrez.com
Martin I. Melendrez, Esq.
Hawkins Melendez, P.C.
10161 Park Run Drive, Suite 150
Las Vegas, NV 89145

blair@cjlawnv.com
Blair R. Jackson, Esq.
Christiansen & Jackson, PC
3960 Howard Hughes Parkway
Las Vegas, Nevada 89169

jjlamadrid@gmail.com
Joslyn LaMadrid, Esq.
10338 Cherry Brook Street, Suite 208
Las Vegas, Nevada 89183

By:   /s/ Diedre N. Hoffman
Diedre N. Hoffman, an Employee of
William E. Cooper Law Offices